## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DENNIS PALKON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| CINCINNATI BELL INC., LYNN A. WENTWORTH, MEREDITH J. CHING, WALTER A. DODS, JR., JOHN W. ECK, LEIGH R. FOX, JAKKI L. HAUSSLER, CRAIG F. MAIER, RUSSEL P. MAYER, THEODORE H. TORBECK, MARTIN J. YUDKOVITZ, CHARLIE ACQUIRECO INC., and CHARLIE MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on December 23, 2019 (the "Proposed Transaction"), pursuant to which Cincinnati Bell Inc. ("Cincinnati Bell" or the "Company") will be acquired by institutional partners of Brookfield Infrastructure Partners L.P.

2.      On December 21, 2019, Cincinnati Bell's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Charlie AcquireCo Inc. ("Parent"), a Delaware corporation, and Charlie Merger Sub Inc. ("Merger Sub," and together with Parent, "Charlie").  Pursuant to the terms of the Merger Agreement, Cincinnati Bell's stockholders will receive $10.50 in cash for

each share of Cincinnati Bell common stock they own.

3.      On February 4, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Cincinnati Bell common stock.

9.      Defendant Cincinnati Bell is an Ohio corporation and a party to the Merger Agreement.  Cincinnati Bell's common stock is traded on the New York Stock Exchange under

the ticker symbol "CBB."

10.    Defendant Lynn A. Wentworth is Chair of the Board of the Company.

11.    Defendant Meredith J. Ching is a director of the Company.

12.    Defendant Walter A. Dods, Jr. is a director of the Company.

13.    Defendant John W. Eck is a director of the Company.

14.    Defendant Leigh R. Fox is President, Chief Executive Officer, and a director of the Company.

15.    Defendant Jakki L. Haussler is a director of the Company.

16.    Defendant Craig F. Maier is a director of the Company.

17.    Defendant Russel P. Mayer is a director of the Company.

18.    Defendant Theodore H. Torbeck is a director of the Company.

19.    Defendant Martin J. Yudkovitz is a director of the Company.

20.    The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.    Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

22.    Defendant Merger Sub is an Ohio corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Cincinnati Bell (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.    This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of December 17, 2019, there were approximately 50,420,700 shares of Cincinnati Bell common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

### SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30.     Cincinnati Bell delivers integrated communications solutions to residential and

business customers over its fiber-optic and copper networks including high-speed internet, video, voice, and data.

31.     The Company provides service in areas of Ohio, Kentucky, Indiana, and Hawaii.

32.     On December 21, 2019, Cincinnati Bell's Board caused the Company to enter into the Merger Agreement.

33.     Pursuant to the terms of the Merger Agreement, Cincinnati Bell's stockholders will receive $10.50 in cash for each share of Cincinnati Bell common stock they own.

34.     According to the press release announcing the Proposed Transaction:

Cincinnati Bell Inc. (NYSE:CBB), together with Brookfield Infrastructure (NYSE: BIP; TSX: BIP.UN), today announced an agreement through which Brookfield Infrastructure and its institutional partners will acquire Cincinnati Bell in a transaction valued at approximately $2.6 billion, including debt (the "Transaction").

Pursuant to the agreement, each issued and outstanding share of Cincinnati Bell common stock will be converted into the right to receive $10.50 in cash at closing of the Transaction. The Transaction price of $10.50 per share of Cincinnati Bell common stock represents a 36% premium to the closing per share price of $7.72 on December 20, 2019 and an 84% premium to the 60-day volume weighted average price. The Transaction has received unanimous approval of Cincinnati Bell's Board of Directors and is subject to customary closing conditions, including Cincinnati Bell shareholder approval and regulatory approval. . . .

The Transaction is expected to close by the end of 2020. It is subject to certain customary closing conditions, including the approval by Cincinnati Bell's shareholders, expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and certain regulatory approvals. Cincinnati Bell will file a current report on Form 8-K with the U.S. Securities and Exchange Commission containing a summary of the terms and conditions of the proposed acquisition as well as a copy of the merger agreement.

Advisors

White & Case LLP is serving as lead legal advisor to Brookfield Infrastructure on this Transaction. Financing will be led by a syndicate of banks including Bank of America, BMO Capital Markets Corp., Citigroup Global Markets Inc., TD Securities and Wells Fargo Securities, LLC.

Morgan Stanley & Co. LLC and Moelis & Company LLC are acting as financial advisors and Cravath, Swaine & Moore LLP, Morgan, Lewis & Blockius LLP, and BosseLaw PLLC are acting as legal advisors to Cincinnati Bell.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

35.   Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

36.   As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37.   First, the Proxy Statement omits material information regarding the Company's financial projections.

38.   The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate Adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

39.   The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

40.   Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("MS") and Moelis & Company LLC ("Moelis").

41.   With respect to MS's Discounted Future Equity Value Analysis, the Proxy Statement fails to disclose: (i) the range of AV/EBITDA Ratios applied by MS in the analysis and MS's basis for applying such ratios; and (ii) the individual inputs and assumptions underlying the range of discount rates between 11.7% and 12.9%.

42.     With respect to MS's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the estimated unlevered free cash flows used by MS in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the range of discount rates from 7.4% to 7.8%; (iii) MS's basis for applying a range of exit multiples from 5.5x to 6.25x; and (iv) the net operating losses used by MS in the analysis.

43.     With respect to MS's Equity Research Analysts' Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by MS in the analysis; and (ii) the sources thereof.

44.     With respect to Moelis's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the estimated future unlevered after-tax free cash flows used by Moelis in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the range of discount rates of 8.00% to 9.25%; and (iii) Moelis's basis for using a range of estimated terminal values of 5.75x to 6.50x.

45.     With respect to Moelis's price targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Moelis in the analysis; and (ii) the sources thereof.

46.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

47.     Third, the Proxy Statement omits material information regarding MS.

48.     The Proxy Statement fails to disclose the timing and nature of the past services MS provided to the parties to the Merger Agreement and their affiliates.

49.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

50.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board; (iii) Reasons for the Merger; (iv) Financial Forecasts; and (v) Opinion of the Company's Financial Advisors.

51.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cincinnati Bell

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cincinnati Bell is liable as the issuer of these statements.

54.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

58.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Charlie

60.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61.     The Individual Defendants and Charlie acted as controlling persons of Cincinnati Bell within the meaning of Section 20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or directors of Cincinnati Bell and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62.     Each of the Individual Defendants and Charlie was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in the making of the Proxy Statement.

64.     By virtue of the foregoing, the Individual Defendants and Charlie violated Section 20(a) of the 1934 Act.

65.     As set forth above, the Individual Defendants and Charlie had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 20, 2020

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
        Brian D. Long (#4347)
        Gina M. Serra (#5387)
        300 Delaware Avenue, Suite 1220
        Wilmington, DE 19801
        Telephone: (302) 295-5310
        Facsimile: (302) 654-7530
        Email: bdl@rl-legal.com
        Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*